HUESTON HENNIGAN LLP
Marshall A. Camp, State Bar No. 231389
mcamp@hueston.com
Padraic W. Foran, State Bar No. 268278
pforan@hueston.com
Lauren E. Border, State Bar No. 327770
lborder@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 866-4825

Attorneys for Non-party
Qualcomm Incorporated

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>KARIM ARABI, SHEIDA ALAN, SANJIV TANEJA, and ALI AKBAR SHOKOUHI,<br><br>      Defendants. | Case No. 3:22-CR-01152-BAS<br><br>**NON-PARTY QUALCOMM INCORPORATED'S NOTICE OF MOTION AND MOTION TO QUASH RULE 17(c) SUBPOENA DUCES TECUM; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently herewith Declarations of Padraic W. Foran and Byron Yafuso]*<br><br>Date:          TBD<br>Time:          TBD<br>Courtroom:     12B<br>Judge:         Hon. Cynthia Bashant |

6803238

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL BACKGROUND ....................................................................5

        A.    Qualcomm Is Defrauded into Purchasing Abreezio .............................5

        B.    In Civil Litigation Against Arabi, Qualcomm Produced
              Nearly 100,000 Documents...............................................................6

        C.    Qualcomm Provided All the Civil Discovery to the
              Government .........................................................................................6

        D.    The Court Quashes Defendant's August 7, 2023 Subpoena
              Almost Entirely ...................................................................................7

        E.    The October 30, 2024 Subpoena........................................................9

III.    LEGAL STANDARD ..............................................................................10

IV.     ARGUMENT ............................................................................................12

        A.    Request 1 (Interview Materials) Is Duplicative of the 2023
              Subpoena and Seeks Inadmissible, Privileged Materials.....................12

        B.    Requests 2 and 3 (Source Code) Seek Highly Sensitive
              Information that Is Both Irrelevant and Burdensome for
              Qualcomm to Gather ..........................................................................16

        C.    Request 4 (Reports Assessing Fair Market Value of IP)
              Seeks Irrelevant Information and Is Overbroad...................................19

        D.    Request 7 (Legal Holds) Seeks Privileged, Irrelevant
              Information.........................................................................................21

V.      CONCLUSION ........................................................................................23

Case No.  3:22-CR-01152-BAS
NON-PARTY QUALCOMM INCORPORATED'S
NOTICE OF MOTION AND MOTION TO QUASH RULE 17(c) SUBPOENA

6803238

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Gen. Motors Corp.*,
  209 F.3d 1051 (8th Cir. 2000)......................................................................16

*Bowman Dairy Co. v. United States*,
  341 U.S. 214 (1951) ............................................................................... 12, 24

*Cohen v. Trump*,
  No. 13-CV-2519-GPC WVG, 2015 WL 3617124 (S.D. Cal. June 9, 2015)......5, 22

*In re eBay Seller Antitrust Litig.*,
  No. C 07-01882 JF (RS), 2007 WL 2852364 (N.D. Cal. Oct. 2, 2007) .................22

*In re Grand Jury Subpoena 92-1(SJ)*,
  31 F.3d 826 (9th Cir. 1994)........................................................................23

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019) .............................................................................21

*LKQ Corp. v. Kia Motors Am., Inc.*,
  345 F.R.D. 152 (N.D. Ill. 2023) .................................................................23

*Major Tours, Inc. v. Colorel*,
  No. CIV 05-3091(JBS/JS), 2009 WL 2413631 (D.N.J. Aug. 4, 2009) .................23

*PersonalWeb Techs., LLC v. Google Inc.*,
  No. C13-01317 EJD (HRL), 2014 WL 4088201 (N.D. Cal. Aug. 19, 2014).....5, 22

*Republic of Ecuador v. Mackay*,
  742 F.3d 860, fn.3 (9th Cir. 2014) ..............................................................16

*S.E.C. v. Roberts*,
  254 F.R.D. 371 (N.D. Cal. 2008)................................................................16

*Shaw v. United States*,
  137 S. Ct. 462 (2016) ..............................................................................21

*United States v. Akhavan*,
  505 F. Supp. 3d 289 (S.D.N.Y. 2020)..........................................................19

*United States v. Banks,*
  55 F.4th 246 (3d Cir. 2022) ................................................................................. 21

*United States v. Brashear,*
  No. 4:11-CR-0062, 2013 WL 6065326 (M.D. Pa. Nov. 18, 2013) ....................... 19

*United States v. Castillo,*
  69 F.4th 648 (9th Cir. 2023) ................................................................................. 21

*United States v. Collins,*
  No. 11-CR-00471-DLJ PSG, 2013 WL 1089908 (N.D. Cal. Mar. 15, 2013) ........ 14

*United States v. Eden,*
  659 F.2d 1376 (9th Cir. 1981) .......................................................................... 13, 23

*United States v. Ellis,*
  No. 13-CR-00818-PJH(DMR), 2017 WL 1164172 (N.D. Cal. Mar. 29, 2017) ..... 23

*United States v. Fields,*
  663 F.2d 880 (9th Cir. 1981) ................................................................................ 12

*United States v. German,*
  No. 4:12-MJ-275, 2013 WL 5347360 (M.D. Ga. Sept. 23, 2013) ......................... 19

*United States v. Jungen,*
  No. 13-CR-121, 2014 WL 4924654 (E.D. Wis. Sept. 30, 2014) ........................... 16

*United States v. Lee,*
  No. 5:06 CR 0424 JW, 2009 WL 724042 (N.D. Cal. Mar. 18, 2009) ......... 5, 14, 21

*United States v. Miller,*
  953 F.3d 1095 (9th Cir. 2020) ............................................................................... 21

*United States v. Nixon,*
  418 U.S. 683 (1974) ............................................................ 1, 2, 12, 15, 19, 21

*United States v. Noriega,*
  764 F. Supp. 1480 (S.D. Fla. 1991) ....................................................................... 22

*United States v. Pac. Gas & Elec. Co.,*
  No. 14-CR-00175-TEH, 2016 WL 3350326 (N.D. Cal. June 16, 2016) .......... 16, 19

*United States v. Patterson,*
  No. TJS-20-1078, 2020 WL 2217262, fn.5 (D. Md. May 7, 2020) ....................... 23

*United States v. Reyes,*
  239 F.R.D. 591 (N.D. Cal. 2006) ........................................................ 2, 13, 14, 15, 17

*United States v. Sellers,*
  275 F.R.D. 620 (D. Nev. 2011) ........................................................ 18, 19, 20, 22, 23

*United States v. Serta Assocs., Inc.,*
  29 F.R.D. 136 (N.D. Ill. 1961) ..................................................................... 4, 20

*United States v. Tomison,*
  969 F. Supp. 587 (E.D. Cal. 1997) ....................................................................... 23

*United States v. W.R. Grace,*
  434 F. Supp. 2d 869 (D. Mont. 2006) .................................................................... 22

*Upjohn Co. v. United States,*
  449 U.S. 383 (1981) ................................................................................... 15, 16

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on a date and time to be determined by the Court, in the James M. Carter and Judith M. Keep United States Courthouse of the United States District Court for the Southern District of California, located at 333 West Broadway, San Diego, CA 92101, Non-Party Qualcomm Incorporated ("Qualcomm"), by and through its undersigned counsel, will and hereby does move under Federal Rule of Criminal Procedure 17(c) and Criminal Local Rule 17.1 for an order quashing a Rule 17(c) subpoena served by Defendant Karim Arabi ("Arabi") on Qualcomm on or around October 30, 2024 (the "2024 Subpoena").

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities in support thereof, the concurrently filed Declarations of Padraic W. Foran and Byron Yafuso and Exhibits thereto, and any other materials or facts on which the Court may rely.

As set forth in more detail in Qualcomm's Memorandum of Points and Authorities, this Motion is brought on the grounds that the 2024 Subpoena requests irrelevant, inadmissible, overbroad, and privileged information that unduly burdens Qualcomm in contravention to Rule 17 of the Federal Rules of Criminal Procedure, Rule 17.1 of this District's Local Criminal Rules, and *United States v. Nixon*, 418 U.S. 683 (1974).

Accordingly, Qualcomm respectfully requests the Court grant its Motion and quash the 2024 Subpoena.

Dated: November 20, 2024

Respectfully submitted,

HUESTON HENNIGAN LLP

By: _____
Marshall A. Camp
Counsel for Non-Party
Qualcomm Incorporated

- 1 -

6803238

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Non-party Qualcomm Incorporated ("Qualcomm") brings this motion to quash a Rule 17 subpoena dated October 29, 2024 (the "2024 Subpoena"), which was served on it by Defendant Karim Arabi ("Arabi"). The 2024 Subpoena is the second improper subpoena that Arabi has served on Qualcomm—the victim of Arabi's alleged fraud—in this case. Qualcomm moved more than a year ago to quash the prior subpoena (*see* Dkt. No. 150), and the Court largely granted the motion, agreeing with Qualcomm that the vast majority of the subpoena's requests reflected "nothing but a fishing expedition" and failed to meet the *Nixon* standard that governs Rule 17 subpoenas by criminal defendants seeking disclosures from third parties.  Dkt. No. 183 (Oct. 13, 2023 Order) at 9; *see id*. at 4-11. Arabi's attempt at a second bite at the apple includes requests similar to ones the Court previously rejected and others that fail for the same reasons as the prior requests. This continued harassment of the victim in this case should end, and the subpoena should be quashed.

As the Court noted in its prior ruling, a Rule 17(c) subpoena may be used by a criminal defendant to obtain pretrial disclosures only when the defendant can demonstrate that the documents sought by the subpoena "are evidentiary and relevant, that they are necessary to prepare for trial, and that the requests are made in good faith and not intended as a general 'fishing expedition.'" Dkt. No. 183 at 4 (quoting *United States v. Nixon*, 418 U.S. 683, 699–700 (1974)). As the Supreme Court has explained, Rule 17(c) subpoenas are not intended "to provide a means of discovery" but only "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 698–99. In addition, a court may quash or modify a Rule 17 subpoena if compliance would be "unreasonable or oppressive," including by calling for production of privileged information. Fed. R. Crim. P. 17(c)(2); *see, e.g.*, *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006) ("[A] Rule 17(c) subpoena 'should be quashed or modified if it calls for privileged

matter.'"). As with Arabi's prior subpoena dated August 7, 2023 (the "2023 Subpoena"), the 2024 Subpoena contains requests that should be quashed both because they fail to meet the *Nixon* elements and are unreasonable and oppressive.

*First*, the 2024 Subpoena seeks "[a]ll materials, notes, recordings, transcripts and other documentation" related to any interviews of five individuals that were conducted in connection with Qualcomm's investigation related to the acquisition of Abreezio. This request is duplicative of requests in the 2023 Subpoena that the Court previously rejected as "nothing but a fishing expedition," including requests for "[a]ll materials, notes, recordings, transcripts and other documentation of Qualcomm's post-purchase investigation" and "[a]ll materials, notes, recordings, transcripts and other documentation of Qualcomm's interviews" with one of the five individuals identified in the 2024 Subpoena. *Compare* Declaration of Padraic W. Foran ("Foran Decl." Exhibit A (2024 Subpoena) at 5, *with* Dkt. No. 183 at 9 (Order quashing similar requests in the 2023 Subpoena). These requests also fail because, as the Court explained with respect to the similar requests in the 2023 Subpoena, they purport to seek information that would at most be "solely useful for impeachment purposes," and thus do not seek admissible, "evidentiary" materials as required by *Nixon*.[1] In addition, as Qualcomm explained in connection with its prior motion, these requests call explicitly for privileged materials: notes and memoranda prepared by Qualcomm's outside litigation counsel.

*Second,* two of the requests in the 2024 Subpoena seek Qualcomm's highly confidential computer source code. Source code is a category of design documentation that is among Qualcomm's most competitively sensitive intellectual property, and the

---

[1] The Court also ordered Qualcomm to produce any information gleaned during internal interviews of certain witnesses to the Court for *in camera* review, or, if Qualcomm believed such materials to be privileged, to produce a privilege log to the Court. Dkt. No. 183 at 8. Qualcomm complied with the Order and submitted a privilege log and other documents to the Court on November 3, 2023.

company takes extraordinary measures to safeguard it, including when it must be made available for inspection in litigation. As is common in intellectual property litigation involving technology companies, Qualcomm typically makes its confidential source code for products accused of patent infringement available in litigation to vetted experts at an off-site facility, and subject to stringent protective order protections. Here, the requested confidential Qualcomm source code appears to have little, if any, relationship to this case or the offenses with which Arabi is charged, and Rule 17's express recognition of the need to protect victims' "confidential information" weighs strongly against allowing Arabi to force his alleged victim to disclose such highly sensitive information. *See, e.g.*, *United States v. Serta Assocs., Inc.*, 29 F.R.D. 136, 138 (N.D. Ill. 1961) (granting motion to quash subpoena for "confidential data and business secrets" because the court was "not convinced of the relevancy of the documents sought, and additionally because it would be most reluctant to force a non-party [ ] to divulge confidential information"). Moreover, as explained below, the requests for source code are overbroad in requesting a source code repository containing the entire history of changes to, and versions of, files created by Abreezio and purchased by Qualcomm (as opposed to a set of source code files for any specific version of an Abreezio program), reflecting yet another apparent fishing expedition. Arabi's requests should be quashed in any case as unduly burdensome and oppressive given the resources that would be required for Qualcomm to attempt to locate and produce potentially responsive source code and repositories.

*Third,* the 2024 Subpoena's request for "[a]ll post-acquisition reviews and reports assessing the fair market value of the intellectual property Qualcomm acquired in the Abreezio acquisition" likewise fails under the *Nixon* standard because it reflects a fishing expedition and seeks irrelevant or inadmissible materials. The vague, open-ended nature of the request makes clear that Arabi is not seeking specific *evidence* he intends to introduce at trial, as required by *Nixon*, but instead attempting to obtain pretrial "discovery" from a third party—a purpose for which both this Court and the

Supreme Court have made clear Rule 17 subpoenas cannot be used. *Accord United States v. Lee*, No. 5:06 CR 0424 JW, 2009 WL 724042, at *2 (N.D. Cal. Mar. 18, 2009) (noting *Nixon* "requires Rule 17 subpoena requests to be particularized and to identify specific items or documents that defendants believe in good faith are in existence"). Even if Arabi could identify any specific documents that he seeks with this request—which he cannot—such documents would also be irrelevant and inadmissible. Arabi is alleged to have orchestrated a scheme to defraud Qualcomm into paying for intellectual property that it already owned. Whether Qualcomm prepared *post-acquisition* documents reflecting assessments of the market value of that intellectual property is irrelevant to whether Arabi committed the charged offenses. Also, any documents reflecting such assessments, which post-date the acquisition and would not have been seen by Arabi, would constitute inadmissible hearsay. Any potentially responsive materials thus separately fail under *Nixon* because they would clearly not be admissible or evidentiary.

*Finally,* Defendant seeks all litigation hold notices and releases with respect to the Abreezio acquisition that Qualcomm provided to its employees—yet another fishing expedition request that calls for obviously privileged documents. Whether Qualcomm issued "litigation holds" in relation to the Abreezio acquisition has nothing to do with whether Arabi defrauded Qualcomm, and in any case such "holds" would clearly constitute Qualcomm's attorney-client communications and attorney work product. *See, e.g., Cohen v. Trump*, No. 13-CV-2519-GPC WVG, 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015) (holding that a "hold memo itself is privileged"); *PersonalWeb Techs., LLC v. Google Inc.*, No. C13-01317 EJD (HRL), 2014 WL 4088201, at *4 (N.D. Cal. Aug. 19, 2014) ("the Court agrees … that the litigation hold notice itself is protected as attorney-client communications and/or work product").

Accordingly, and for the reasons set forth below, Qualcomm respectfully requests that the Court grant this motion and enter an order quashing the 2024 Subpoena.

## II.    FACTUAL BACKGROUND[2]

### A.    Qualcomm Is Defrauded into Purchasing Abreezio.

From 2007 to 2012, Arabi worked for Qualcomm as a Vice President of Engineering, and from 2013 to 2016 as a Vice President of Research and Development. Dkt. No. 9 (Superseding Indictment) ¶ 1. As a Qualcomm employee, Arabi was bound by agreements providing generally that any intellectual property he created during his employment would be owned by Qualcomm. *Id.*

In October 2015, while Arabi was still employed by Qualcomm, the company agreed to pay $180 million to acquire Abreezio, LLC, which had been presented to Qualcomm as an "angel-funded Silicon Valley based" startup with "groundbreaking technology" originally invented by Canadian graduate student Sheida Alan. *Id.* ¶¶ 2, 16. Unbeknownst to Qualcomm at the time, "Sheida Alan" was in fact Arabi's sister: she had changed her name from Sheida Arabi just months before Qualcomm's acquisition of Abreezio closed. *Id.* ¶ 16.w. And although Ms. Alan was pursuing a master's degree in Canada, her research had nothing to do with the sophisticated semiconductor technology attributed to Abreezio. *Id.* ¶ 2. In fact, it was Defendant Karim Arabi who was intimately involved in the formation of Abreezio and the development of its technology—facts that he and his co-Defendants went to great lengths to conceal from Qualcomm, and to falsely attribute to Ms. "Alan," in order to dupe the company into agreeing to pay $180 million for technology developed by its own employee. *See id.* ¶¶ 15–16.

Arabi was charged with wire fraud conspiracy, wire fraud, and conspiracy to launder monetary instruments. *See generally* Dkt. No. 9 (Superseding Indictment). On August 10, 2023, Defendant Sanjiv Taneja entered a guilty plea pursuant to an agreement in which he admitted, among other things, that he participated with Arabi

---

[2] Sections II(A)-(C) are contained in Qualcomm's 2023 motion to quash and reproduced here for the Court's convenience with minor edits and additions.

in a scheme to defraud Qualcomm in connection with its agreement to purchase Abreezio by concealing Arabi's role in the company's formation, development and marketing, and by attributing Arabi's actions to Sheida Alan. *See* Dkt. No. 144 (Plea Agreement) at 3–4. On October 5, 2023, Defendant Ali Akbar Shokouhi admitted he participated with Arabi in the same fraudulent scheme. *See* Dkt. No. 179 (Plea Agreement) at 3–5.

### B.  In Civil Litigation Against Arabi, Qualcomm Produced Nearly 100,000 Documents.

In 2017, after uncovering Arabi's fraud, Qualcomm filed a civil action in San Diego Superior Court against Arabi, Alan, and Taneja, captioned *Qualcomm v. Arabi et al.*, Case Number 37-2017-00040719-CU-FR-CTL (S.D. Super.) (Trapp, J.) (the "Civil Litigation"). In connection with the Civil Litigation, Arabi sought, and Qualcomm produced, enormous volumes of information, including nearly 100,000 documents. Dkt. No. 150-1 ¶ 5. Arabi's discovery requests included at least 57 document requests, 32 special interrogatories, and 30 requests for admission. *Id.* Many of these requests overlapped substantially with, or sought information encompassed by, the requests contained in the 2024 Subpoena. In response to these and dozens of other requests, Qualcomm produced approximately 99,868 documents. Dkt. No. 150-1 ¶ 5.

### C.  Qualcomm Provided All the Civil Discovery to the Government.

During its investigation in this case, the Government served Qualcomm with two grand jury subpoenas containing 15 documents requests. *Id.* ¶ 6. These requests sought, among other things, every document that any party had produced in the Civil Litigation. *Id.* ("All documents, records and ESI produced by any party in connection with the Civil [Action]"). Qualcomm produced approximately 102,508 documents to the Government in response to these subpoenas, including every one of the 99,868 documents that Qualcomm had previously produced to Arabi in the Civil Litigation. *Id.* ¶ 7. Qualcomm also produced other documents to the Government, such as

interrogatory responses and other written discovery from the Civil Litigation, certain Qualcomm company policies and personnel records relevant to this case, and other materials. *Id.* Qualcomm understands that the Government has made these materials available to the Defendants in this case. *Id.* ¶ 8.

**D.   The Court Quashes Defendant's August 7, 2023 Subpoena Almost Entirely.**

On August 7, 2023, Arabi served Qualcomm with the 2023 Subpoena. *Id.* ¶ 2. It contained no fewer than *49 requests*, broadly seeking (among other things) three categories of documents: (1) materials relating to Qualcomm's investigation of the fraudulent Abreezio acquisition, including materials from witness interviews allegedly conducted for at least 13 people and entities; (2) communications between Qualcomm and its representatives and the Government relating to Arabi's crimes; and (3) all personnel files of anyone remotely related to Qualcomm's investigation, including those "who had a relationship with Dr. Arabi while he worked at Qualcomm." *See* Dkt. No. 150-2 (2023 Subpoena).

Qualcomm moved to quash on August 28, 2023, and Defendant opposed. Dkt. Nos. 150; 157. The Court heard argument on the motion on October 2, 2023, noting that several of Defendant's requests were "very broad" and amounted to a "fishing expedition." Dkt. No. 182 (Hearing Transcript) at 4:4; 14:10. The Court also questioned the relevance and admissibility of Defendant's requests, including the request for documentation of witness interviews. *Id.* at 4:14-17 ("With respect to the first request, the documentation of interviews, is there any relevance other than potential impeachment? I mean, they wouldn't be otherwise admissible; right?"). During the hearing, counsel for Qualcomm also explained that—in addition to the relevance and admissibility issues the Court noted—responsive witness interviews were conducted by outside counsel and materials relating to them were privileged. *Id.* at 19:13-20:5. And as Qualcomm withheld these materials from the Government, Qualcomm had maintained and not waived any privilege. *Id.*

On October 13, 2023, the Court issued its order, granting in part and denying in part. Dkt. No. 183. The Court denied Qualcomm's motion to quash only with respect to the first category of documents (witness interview materials), and only in part. The Court held that "any information gleaned during Qualcomm's internal interviews would be solely useful for impeachment purposes," and the majority of Arabi's requests were "nothing but a fishing expedition." *Id.* at 8-9. Specifically, Defendant failed to show even an "articulable suspicion that there [wa]s something in Qualcomm's files that ha[d] not been produced that might be material to his defense." *Id.* at 8. The Court thus ordered Qualcomm to produce—to the Court *in camera*, and only to the extent they were not already produced to the Government—documentation of Qualcomm's interviews of just three witnesses: Joseph Fang, Kevork Kechichian, and Saniv Taneja. Additionally, the Court required a showing of "specific information" to support Arabi's requests for these witnesses because Arabi already "appear[ed] to have a great deal of information from Qualcomm's internal investigation." *Id.* at 3, 7. Recognizing that Qualcomm held privilege over documents relating to the interviews, the Court also ordered Qualcomm to submit a log. *Id.* at 8, 11.

The Court granted in full Qualcomm's motion to quash Defendant's requests seeking the second category (communications between Qualcomm's outside counsel and the government seeking Arabi's prosecution) and third category of documents (personnel files). For the second category, the Court found that Arabi "fail[ed] to detail what production of … documentation would reveal in the way of relevant of admissible evidence." *Id.* at 9. Similarly, for the third category, the Court found the request "clearly overbroad" as Defendant "fail[ed] to show what admissible evidence is likely to be found" and "a great deal of obviously inadmissible, private information is likely to be swept up … ." *Id.* at 10.

Qualcomm complied with the Court's order on November 3, 2023, lodging (1) all non-privileged materials of Qualcomm's interview(s) with Joseph Fang, Kevork

Kechichian, and Sanjiv Taneja not already produced to the Government that Qualcomm or Qualcomm's outside counsel had in their custody, possession, or control; and (2) a privilege log. Foran Decl. ¶ 3. No one challenged any entry on Qualcomm's privilege log. *Id.*

**E.     The October 30, 2024 Subpoena.**

A year later, Defendant has again subpoenaed Qualcomm, again seeking many of the same documents. Foran Decl. Ex. A (2024 Subpoena). The 2024 Subpoena, which Arabi served on Qualcomm on October 30, 2024 contains seven requests, five of which are at issue and summarized below.[3] *See id.*

- **Additional interview materials:** Request 1 demands "[a]ll materials, notes, recordings, transcripts and other documentation of any interview of, or phone call with" five individuals (Ziad Mansour, Duane Nelles, Bradley Quinton, Hiten Somwal, and Jim Thompson), including "any and all documents produced by the individuals to Qualcomm" during Qualcomm's investigation relating to its acquisition of Abreezio in and around 2017 and December 2018. Defendant does not request documents that were already produced to the Government but demands that Qualcomm "produce all factual statements made by or attributed to the identified witnesses," suggesting "[a]ny attorney thoughts or impressions included in any interview summary may be redacted." Foran Decl. Ex. A at 5.

- **Source code and revision control repositories:** Request 2 demands

---

[3] This Motion does not address Requests 5 and 6. Request 5 demands a "privilege log identifying all documents withheld by Qualcomm in response to the government's grand jury subpoena issued on May 14, 2020." Foran Decl. Ex. A at 6. Qualcomm did not prepare any privilege log in response to the May 2020 subpoena and thus has no responsive documents, as noted in Qualcomm's November 14, 2024 responses and objections to the Subpoena. Foran Decl. ¶ 8. Request 6 demands a "privilege log identifying all documents withheld by Qualcomm in response to this Subpoena." Foran Decl. Ex. A at 6. As Qualcomm has not agreed to produce any documents in response to the 2024 Subpoena, it has no documents responsive to this request either, as noted in its November 14, 2024 responses and objections.

"Abreezio's source code and revision control repository, including all metadata" that former Invionics employees allegedly delivered to Qualcomm employee Robert Kwan on a USB key or hard drive, "in or around early November 2015." Foran Decl. Ex. A at 5. Similarly, Request 3 demands "[a]ll source code and revision control repositories, including all metadata related to any Field Programmable Gate Array ('FPGA') demos Abreezio presented to Qualcomm during due diligence." *Id.*

- **Assessments of the fair market value of intellectual property:** Request 4 demands "[a]ll post-acquisition reviews and reports assessing the fair market value of the intellectual property Qualcomm acquired in the Abreezio acquisition." Foran Decl. Ex. A at 5.

- **Legal hold notices:** Request 7 demands "[a]ll emails and other documentation regarding the preservation notices or legal hold notices and releases of those preservation notices or legal hold notices with respect to the Abreezio acquisition that were provided to Qualcomm employees." Foran Decl. Ex. A at 6.

Qualcomm served responses and objections to the subpoena on November 14, 2024. Foran Decl. ¶ 5. The parties met and conferred on November 15, 2024 regarding the (in)validity of the subpoena requests and were unable to narrow the scope of their disagreement. *Id.*

## III.   LEGAL STANDARD

General discovery is not available to defendants in criminal cases. Rule 16 of the Federal Rules of Criminal Procedure prescribes the limited scope and substance of criminal discovery. Defendants have no generalized right to issue subpoenas calling for production of documents or other materials *before* trial. Under Rule 17(c), a subpoena that requires a witness to produce materials before trial must be approved by the court. Fed. R. Crim. P. 17(c)(1). As the Supreme Court and Ninth Circuit have repeatedly held, however, Rule 17(c) "was not intended to provide a means of

discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698–99 (1974); *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms."). Rather, the purpose of Rule 17 is specific and narrow: "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 698–99. A defendant therefore may not use a Rule 17(c) subpoena as an end-run around the limited documents and information available under Rule 16.

To ensure that Rule 17(c) subpoenas do not morph into a general discovery tool, the Federal Rules of Criminal Procedure and the courts place strict guardrails on their use. To obtain documents under Rule 17(c), the Supreme Court in *Nixon* held that a defendant must show, at minimum:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production . . .; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Id.* at 699–700.[4] This District has codified this *Nixon* language, almost word for word, in its Local Rules. *See* Local Criminal Rule 17.1 (requiring defendants to submit affidavit meeting *Nixon* factors to issue Rule 17 subpoena).

Applying these principles, *Nixon* and its progeny hold that the proponent of a Rule 17(c) subpoena has the burden to show that the requested documents are relevant, admissible, and specifically identified. *Nixon*, 418 U.S. at 700. The proponent must also "demonstrate that the subpoenaed materials are not available from any other

---

[4] The Ninth Circuit applies the *Nixon* standard when determining whether to quash a Rule 17 subpoena served on a non-party like Qualcomm. *See, e.g.*, *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) ("[W]e see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States.") (citation omitted). As this Court has held, "the *Nixon* standard remains the law for Rule 17(c) subpoenas." Dkt. No. 183 at 4.

source." *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981). In addition, even when a subpoena meets the above requirements, it may still be quashed if a court concludes that compliance with the subpoena would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). This includes, among other circumstances, where a subpoena "calls for privileged matter.'" *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006).

Courts are also especially sensitive to subpoenas that seek information from or about a victim. Where such a subpoena seeks "personal or confidential information about a victim," it may be served only by court order, and, barring exceptional circumstances, the order may be issued only after "giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object." Fed. R. Crim. P. 17(c)(3).

## IV.    ARGUMENT

Arabi's 2024 Subpoena is a generalized "fishing expedition" that cannot meet the required elements for a pretrial subpoena in a criminal case because it is unreasonable and oppressive. The requests in the 2024 Subpoena lack specificity and seek materials that are irrelevant and otherwise inadmissible, and privileged. The subpoena should therefore be quashed.

### A.    Request 1 (Interview Materials) Is Duplicative of the 2023 Subpoena and Seeks Inadmissible, Privileged Materials.

As described above, Request 1 demands "[a]ll materials, notes, recordings, transcripts and other documentation of any interview of, or phone call with" five individuals (Ziad Mansour, Duane Nelles, Bradley Quinton, Hiten Somwal, and Jim Thompson), including "any and all documents produced by the individuals to Qualcomm" during the course of Qualcomm's investigation relating to its acquisition of Abreezio in and around 2017 and December 2018, "to the extent such documents have not been already produced to the government." Foran Decl. Ex. A at 5. This request is improper for several reasons.

As an initial matter, this request duplicates requests from the 2023 Subpoena that the Court already rejected. Request A(2) from the 2023 Subpoena demanded "[a]ll materials, notes, … and other documentation of Qualcomm's post-purchase investigation," and Request A(5) demanded "[a]ll materials, notes, … and other documentation of Qualcomm's interviews with Brad Quinton." These requests effectively sought all materials, notes, and documentation of interviews of Nelles, Somwal, Thompson, and Quinton—the very requests that Arabi makes again in the 2024 Subpoena. Dkt. No. 150-2 at 5; Foran Decl. ¶ 6. The Court has already rejected these requests as "nothing but a fishing expedition." Dkt. No. 183 at 9. Arabi cannot justify reviving these rejected demands. As in 2023, he continues to "fail[] to show [even] articulable suspicion that there is something in Qualcomm's files that has not been produced that might be material to his defense." *Id.* at 8.

Meanwhile, Qualcomm's litigation counsel did not interview Mansour in connection with its investigation of the Abreezio acquisition, and Qualcomm thus does not have any documents responsive to Request 1(a). Foran Decl. ¶ 6. This fact alone demonstrates that Arabi's request for additional interview materials is a fishing expedition—Defendant apparently "do[es] not know what the evidence consists of or what it will show." *United States v. Lee*, No. 5:06 CR 0424 JW, 2009 WL 724042, at *2 (N.D. Cal. Mar. 18, 2009) (granting in part motion to quash Rule 17 subpoena).

Nor can Arabi overcome the hurdle that Qualcomm's interview materials are inadmissible. As the Court previously held, "any information gleaned during Qualcomm's internal interviews would be solely useful for impeachment purposes" (Dkt. 183 at 8) because the assessment of Qualcomm and its counsel regarding Arabi's liability or culpability is inadmissible hearsay and otherwise irrelevant. *See Reyes*, 239 F.R.D. at 600 (finding "summaries, notes and memoranda related to the interviews of [ ] employees [ ] includes only hearsay," and defendant's former employer's "attorney's formal opinion about whether any crimes were committed would not be relevant evidence … ."); *United States v. Collins*, No. 11-CR-00471-DLJ PSG, 2013

WL 1089908, at *4 (N.D. Cal. Mar. 15, 2013) (quashing subpoena requests that "explicitly call[ed] for inadmissible hearsay" about relevant topics and did not satisfy any hearsay exception). As the Supreme Court has held, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701; *see also Reyes*, 239 F.R.D. at 601 ("Unfortunately for [defendant], Rule 17(c) does not entitle him to the pre-trial production of impeachment material.").

In addition to the admissibility problem, Request 1 calls for privileged materials: notes and memoranda that Qualcomm's outside litigation counsel prepared, in connection with interviews they conducted, at the direction of Qualcomm's in-house counsel, and in anticipation of or as part of the Civil Litigation. Foran Decl. ¶ 7. Qualcomm does not have any transcripts or recordings of interviews—only notes and memoranda by outside counsel that reflect legal advice and attorneys' mental impressions. *Id.* It is black-letter law that these documents are both attorney-client communications and attorney work product.[5] *Upjohn Co. v. United States*, 449 U.S. 383, 397, 401 (1981) (finding "communications by [ ] employees to counsel are covered by the attorney-client privilege" and the "notes and memoranda sought by the Government … are work product based on oral statements"). Because it calls for privileged materials, Request 1 is thus unreasonable and oppressive and "should be quashed." *Reyes*, 239 F.R.D. at 598.

In an apparent concession that Request 1 calls for privileged materials, Defendant half-heartedly suggests that "factual statements made by or attributed to the identified witnesses" may be produced and "[a]ny attorney thoughts or impressions included in any interview summary may be redacted." Foran Decl. Ex. A at 5. This is nonsense. When an attorney takes notes or prepares a memorandum of a key witness

---

[5] Tellingly, Arabi did not challenge any of the privilege log entries Qualcomm submitted to the Court describing these documents in connection with the 2023 Subpoena. Foran Decl. ¶ 3.

interview, it is not possible to disentangle "factual" statements from the attorney's privileged thoughts and impressions. The entire document is privileged: "facts contained within [attorneys'] notes are likely inextricably tied with the attorneys' mental thoughts and impressions," and "revelation of all the purely factual assertions elicited from an interviewee may reveal the questions asked and therefore the attorneys' mental impressions and conclusions." *S.E.C. v. Roberts*, 254 F.R.D. 371, 383 (N.D. Cal. 2008) (denying request for disclosure of factual information within interview notes). As the Supreme Court has explained, "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Upjohn*, 449 U.S. at 399; *see also Republic of Ecuador v. Mackay*, 742 F.3d 860, 869, fn.3 (9th Cir. 2014) ("[A]n attorney's mental impressions, conclusions, opinions, or legal theories … [are] virtually undiscoverable.") (cleaned up); *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (finding "[a]ttorney notes reveal an attorney's legal conclusions because, when taking notes, an attorney often focuses on those facts that she deems legally significant" and "the judge clearly erred because she ordered disclosure of opinion work product").

Additionally, if Qualcomm were required to attempt to separate "factual" statements from privileged content in its privileged interview materials, this would create unworkable line-drawing issues and be unduly burdensome on Qualcomm and its representatives. Such a request is both unreasonable and oppressive under Rule 17(c)(2). *See United States v. Pac. Gas & Elec. Co.*, No. 14-CR-00175-TEH, 2016 WL 3350326, at *3 (N.D. Cal. June 16, 2016) (quashing as overly burdensome a Rule 17 subpoena request that would have required subpoenaed party to spend more than 80 hours gathering documents); *United States v. Jungen*, No. 13-CR-121, 2014 WL 4924654, at *5 (E.D. Wis. Sept. 30, 2014) (quashing Rule 17(c) subpoena in part because "the sheer amount of information that [the subpoenaed parties] would have to

review, in addition to creating a privilege log, would, in this court's view, be unduly burdensome.").

In sum, Request 1 duplicates requests that the Court quashed in the 2023 Subpoena and calls for irrelevant hearsay that is privileged. In the words of the Court, Arabi "appears to be fishing for evidence that might possibly be useful without having any idea or providing any suggestion as to what that evidence might be," resulting in an "abuse of Rule 17(c)." Dkt. No. 183 at 10. The Court, therefore, should decline Arabi's invitation to revisit this issue and quash his demand for these materials.[6]

**B.      Requests 2 and 3 (Source Code) Seek Highly Sensitive Information that Is Both Irrelevant and Burdensome for Qualcomm to Gather.**

Requests 2 and 3 seek Qualcomm's highly sensitive "source code and revision control repositor[ies], including all metadata." A revision control repository is a database containing the entire history of versions of source code files (i.e., every version of every source code file that ever existed for a software project). Declaration of Byron Yafuso ("Yafuso Decl.") ¶ 9. Request 2 demands production of source code and revision control repositories, including all metadata, that former Invionics employees allegedly delivered to Qualcomm employee Robert Kwan on a USB stick or hard drive in or around November 2015. Foran Decl. Ex. A at 5. Request 3 seeks source code and revision control repositories, including all metadata, related to "any Field Programmable Gate Array ('FPGA') demos Abreezio presented to Qualcomm during due diligence." *Id.*

Following Qualcomm's acquisition of Abreezio, the confidential "source code and revision control repositor[ies], including all metadata" became Qualcomm's

---

[6] In the alternative, if the Court is inclined to allow the production of materials responsive to Request 1, Qualcomm requests the Court order *in camera* inspection of materials "so that the court may review the material and disclose it, if ever, when it becomes ripe for impeachment," *Reyes*, 239 F.R.D. at 600, along with a privilege log. *See* Dkt. No. 183 at 5 (the Court's October 13, 2023 ordering same for three witnesses).

intellectual property. As a leading technology company, this information is competitively sensitive, and Qualcomm must take careful measures to protect it. Yafuso Decl. ¶ 2. To start, revision control repositories are not human-readable "source code" that Qualcomm generally makes available for discovery. *See id.* ¶ 9 ("For more than 15 years, I have been heavily involved in managing source code discovery processes and protocols at Qualcomm, and I am unaware of Qualcomm ever making available for inspection in litigation a revision control repository … ."). And where Qualcomm's source code is genuinely at issue in civil litigation—and subject to civil litigation's much farther-reaching discovery—Qualcomm requires the entry of a supplemental protective order that specifies the protocol for protecting its source code. *Id.* ¶ 3. Under these protective orders, source code is generally available for review at a secure third-party facility. *See* Yafuso Decl. Ex. A ¶ 31(a)(i); Ex. B ¶ 31(a)(i); Ex. C ¶ 32(a)(i); Ex. D ¶ 32(a)(i). Additionally, typically only experts and outside counsel retained specifically for the litigation—not employees of a party itself—may inspect the source code. Yafuso Decl. ¶ 3. During the inspection, Qualcomm imposes numerous necessary restrictions to protect the source code, such as restrictions on the process of creating limited numbers of hard copy pages of select source code excerpts, and restrictions on access to hard copy pages of source code printouts. *Id.* ¶ 5. These steps are essential to protect Qualcomm's sensitive source code, and courts around the country have adopted these measures. Yafuso Decl. ¶ 3.

Rule 17 explicitly recognizes the need to protect victims' "confidential information." Fed. R. Crim. P. 17(c)(3). Meanwhile, Arabi cannot articulate even a minimal showing of relevancy for Qualcomm's confidential source code, let alone enough to meet the stringent Rule 17 standard. "It is not enough that the documents requested in a Rule 17(c) subpoena *duces tecum* may have some potential of relevance and evidentiary use." *United States v. Sellers*, 275 F.R.D. 620, 624 (D. Nev. 2011). Rather, the proponent must show that there is a "sufficient likelihood" that the documents requested by the Subpoena are "relevant to the offenses charged in the

indictment." *Id.* The source code that Qualcomm acquired from Abreezio would not shed any light on Defendant's charges for wire fraud conspiracy, wire fraud, and conspiracy to launder monetary instruments. *See generally* Dkt. No. 9 (Superseding Indictment). Nor can Arabi show, as he would have to, that such source code is *admissible*. *Nixon*, 418 U.S. at 700. Because "[t]he source code … is simply not relevant to determining any issue in the case," Requests 2 and 3 cannot meet the *Nixon* standards and should be quashed. *United States v. Brashear*, No. 4:11-CR-0062, 2013 WL 6065326, at *4 (M.D. Pa. Nov. 18, 2013) (granting motion to quash Rule 17 subpoena for source code where it was "unclear how obtaining the … source code would shed any further light on th[e] alleged violation"); *see also United States v. German*, No. 4:12-MJ-275, 2013 WL 5347360, at *3 (M.D. Ga. Sept. 23, 2013) (granting motion to quash Rule 17 subpoena demand for source code because "any testimony or documents regarding … source code are irrelevant to this action"); *United States v. Akhavan*, 505 F. Supp. 3d 289, 291 (S.D.N.Y. 2020) (quashing subpoena even when it was "doubtless" that "relevant information [was] among the nine categories of documents" requested because the court would "not command [the subpoenaed party] to turn over the haystack so that [the defendant] can extract the needle").

In addition, even the act of *searching for* the requested source code and revision control repositories in this case (let alone making it available) would be unduly burdensome and oppressive to Qualcomm. The materials requested are more than nine years old. This intellectual property, if it still exists, would have been copied onto magnetic tape disaster-recovery media and archived, amongst thousands of similar records, at an off-site location of Qualcomm's vendor. Yafuso Decl. ¶ 8. Identifying the media and restoring it to reviewable form (if possible) would be an expensive, time-consuming, and potentially unreliable process. *Id.* Furthermore, the request for entire revision control repositories is overbroad and would be even more burdensome to Qualcomm to track down than inspection of source code. *Id.* ¶ 9. This burden on Qualcomm alone justifies quashing Defendant's Requests 2 and 3. *See Pac. Gas &*

*Elec. Co.*, 2016 WL 3350326, at *3 (quashing as unduly burdensome Rule 17 subpoena request).

At bottom, Requests 2 and 3 seek highly sensitive, irrelevant information that would be unduly burdensome for Qualcomm to search for and collect. Coupling the commercially sensitive nature of these requests with their lack of relevance, Arabi cannot justify production of Qualcomm's highly confidential intellectual property. This is particularly true because Arabi—who, as the indictment in this case outlines, cannot be trusted with such commercially sensitive information—is demanding the information from the non-party victim. *See, e.g.*, *United States v. Serta Assocs., Inc.*, 29 F.R.D. 136, 138 (N.D. Ill. 1961) (granting motion to quash subpoena for "confidential data and business secrets" because the court was "not convinced of the relevancy of the documents sought, and additionally because it would be most reluctant to force a non-party [ ] to divulge confidential information"). The requests are "unreasonable and oppressive" and should be quashed. *See* Fed. R. Crim. P. 17(c)(2).[7]

**C.     Request 4 (Reports Assessing Fair Market Value of IP) Seeks Irrelevant Information and Is Overbroad.**

Request 4 seeks "[a]ll post-acquisition reviews and reports assessing the fair market value of the intellectual property Qualcomm acquired in the Abreezio acquisition." Foran Decl. Ex. A at 5. This request fails *Nixon*'s requirements because it seeks documents that are irrelevant, inadmissible, and non-specific.

Like Arabi's other irrelevant requests fishing for information, Request 4 demands information that is in no way "relevant to the offenses charged in the indictment." *Sellers*, 275 F.R.D. at 624. Arabi defrauded Qualcomm into buying

---

[7] In the alternative, should the Court be inclined to order Qualcomm to produce any of its confidential intellectual property in this case, Qualcomm requests the Court require the entry of a supplemental protective order and allow Qualcomm an opportunity to be heard if the parties cannot reach agreement on its terms.

intellectual property that it already owned. Whether Qualcomm prepared *post-acquisition* documents reflecting assessments of the market value of that intellectual property (and whether such value was high, low, or in between) is irrelevant to whether Arabi committed the charged offenses. In short, Qualcomm's assessment of the fair market value of intellectual property it acquired from Abreezio has no connection to Defendant's fraud and conspiracy charges.[8] *See generally* Dkt. No. 9. Further, any documents reflecting fair market value assessments which post-date the acquisition and would not have been seen by Arabi would clearly constitute hearsay. For the same reasons, such an assessment would not be evidentiary and admissible.

This request also fails the specificity prong of the *Nixon* test, which "requires Rule 17 subpoena requests to be particularized and to identify specific items or documents that defendants believe in good faith are in existence." *Lee*, 2009 WL 724042, at *2 (citing *Nixon*, 418 U.S. at 700). "The mere hope that the documents sought will produce favorable evidence is not sufficient"—specificity "is not satisfied if the defendants do not know what the evidence consists of or what it will show." *Id.*

---

[8] In connection with the parties' meet and confer efforts, counsel for Arabi cited several cases to support the purported relevance of Request 4. *See* Foran Decl. Ex. B (citing *United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020); *Shaw v. United States*, 137 S. Ct. 462 (2016); *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019); *United States v. Castillo*, 69 F.4th 648 (9th Cir. 2023); *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022)). None supports Arabi's position. *Miller* and *Shaw* stand for the uncontroversial proposition that "wire fraud requires the intent to deceive *and* cheat — in other words, to deprive the victim of money or property by means of deception." *Miller*, 953 F.3d at 1103. Arabi intended to (and did) deceive and cheat Qualcomm into paying more than $100 million to "acquire" intellectual property *that Qualcomm already owned*. Whatever the fair market value of this intellectual property, the entire purchase price is an actual loss. *See Banks*, 55 F.4th at 257 (sentencing guidelines consider the victim's "actual loss"). *Castillo*, meanwhile, applied *Kisor* to consider the definition of "controlled substance offense." *Castillo*, 69 F.4th at 651. None of Arabi's cited cases can support any argument that when a defendant defrauds his victim into buying back its own property, the defendant should get expansive discovery into the victim's assessment of the fair market value of that property.

Request 4 is unbound by time, ambiguously requesting *all* "post-acquisition reviews and reports" that assess the "fair market value of the intellectual property" at any time since Qualcomm acquired Abreezio in 2015 (i.e., over a nine-year period). Foran Decl. Ex. A at 5; Dkt. No. 9 ¶ 11. Arabi is unable to point to any specific report or review, and instead "merely hopes that something useful will turn up." *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused."). This request thus fails to demand documents that are "sharply defined," as Rule 17(c) requires. *Sellers*, 275 F.R.D. at 624; *United States v. W.R. Grace*, 434 F. Supp. 2d 869, 873 (D. Mont. 2006) ("where the party seeking the subpoena can describe the material sought only in broad terms or is unsure whether the material even exists, and where the claim of relevance is necessarily speculative, the request is likely to be denied").

**D.      Request 7 (Legal Holds) Seeks Privileged, Irrelevant Information.**

Request 7 seeks "[a]ll emails and other documentation regarding the preservation notices or legal hold notices and releases of those preservation notices or legal hold notices with respect to the Abreezio acquisition that were provided to Qualcomm employees." Foran Decl. Ex. A at 6. It is improper and fails the *Nixon* requirements because it seeks privileged, irrelevant, and inadmissible documents.

Qualcomm's legal hold notice and communications relating to it were sent at the direction of counsel in anticipation of or as part of litigation. Foran Decl. ¶ 9. They are protected by both the work product doctrine and attorney-client privilege. *See Cohen v. Trump*, No. 13-CV-2519-GPC WVG, 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015) (noting "the hold memo itself is privileged"); *PersonalWeb Techs., LLC v. Google Inc.*, No. C13-01317 EJD (HRL), 2014 WL 4088201, at *4 (N.D. Cal. Aug. 19, 2014) ("the Court agrees … that the litigation hold notice itself is protected as attorney-client communications and/or work product"); *In re eBay Seller Antitrust*

*Litig.*, No. C 07-01882 JF (RS), 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007) (similar). Even in the *civil* context which allows for much more expansive discovery,[9] courts across the country find litigation hold letters "as a general matter … are not discoverable" because they tread on applicable privileges. *See Major Tours, Inc. v. Colorel*, No. CIV 05-3091(JBS/JS), 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009) (collecting authorities). Since it calls for privileged materials, Request 7 must be quashed. *See, e.g., United States v. Tomison*, 969 F. Supp. 587, 597 (E.D. Cal. 1997) (noting "the general principle that a recipient may seek to quash a Rule 17(c) subpoena on the grounds that it seeks material protected by the attorney-client privilege") (citing *In re Grand Jury Subpoena 92-1(SJ)*, 31 F.3d 826 (9th Cir. 1994)); *United States v. Ellis*, No. 13-CR-00818-PJH(DMR), 2017 WL 1164172, at *3 (N.D. Cal. Mar. 29, 2017) (quashing subpoena that sought privileged matter).

Even if Arabi could overcome the privilege issue (he cannot), Request 7 presents another glaring defect: the request is irrelevant to the offenses charged in the indictment. *See Sellers*, 275 F.R.D. at 624. "A litigation hold memorandum or notice is not evidence of a party's claims or defenses," but rather "falls within the type of non-substantive information that constitutes discovery on discovery." *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 168 (N.D. Ill. 2023). Qualcomm's preservation conduct in the Civil Litigation is not at issue in this criminal prosecution where Qualcomm is a non-party (and victim). Even if it were, Arabi cannot make any preliminary showing that Qualcomm has failed to preserve evidence, and mere speculation is not sufficient to sustain his request. *See Sellers*, 275 F.R.D. at 623–24 ("Conclusory allegations of relevance and admissibility are insufficient to meet the [party seeking the subpoena's] burden.") (citing *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981)). Request 7 thus represents a "fishing expedition to see what may

---

[9] *See United States v. Patterson*, No. TJS-20-1078, 2020 WL 2217262, at *4, fn.5 (D. Md. May 7, 2020) (noting the scope of information available under Rule 17 "pales in comparison to what is available under the civil discovery rules").

turn up." *Bowman*, 341 U.S. at 221. Arabi cannot show, as he must, that Request 7 seeks documents that are evidentiary and relevant, so the request should be quashed.

## V.    **CONCLUSION**

The Court found the 2023 Subpoena was largely an improper fishing expedition on non-party-victim Qualcomm. The 2024 Subpoena is more of the same. It seeks many of the same documents, suffers from the same defects, and serves to harass Qualcomm—the victim of Arabi's crimes—even further. Qualcomm respectfully requests the Court grant this motion and quash the 2024 Subpoena.

Dated:  November 20, 2024

Respectfully submitted,

HUESTON HENNIGAN LLP

By: _____
Marshall A. Camp
Padraic W. Foran
Lauren E. Border

*Counsel for Non-party*
*Qualcomm Incorporated*

## **PROOF OF SERVICE**

*United States of America, V. Karim Arabi, et al.*
U.S.D.C. Southern District of California, Case No. 3:22-cr-01152-BAS

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 523 West 6th Street, Suite 400, Los Angeles, CA 90014.

I hereby certify that on November 21, 2024, I caused the electronically filed aforementioned document with the United States District Court Southern District of California by using the CM/ECF system. I certify that counsel of record registered as ECF Filers will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 21, 2024, at Los Angeles, California.

<br>

| | |
|---|---|
| Susan Segovia | |
| (Type or print name) | (Signature) |

Case No. 3:22-CR-01152-BAS
NON-PARTY QUALCOMM INCORPORATED'S
NOTICE OF MOTION AND MOTION TO QUASH RULE 17(c) SUBPOENA