HUESTON HENNIGAN LLP
Marshall A. Camp, State Bar No. 231389
mcamp@hueston.com
Padraic Foran, State Bar No. 268278
pforan@hueston.com
Lauren Border, State Bar No. 327770
lborder@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 866-4825

Attorneys for Non-Party
Qualcomm Technologies, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:22-cr-01152-BAS |
| Plaintiff, | **NON-PARTY QUALCOMM INCORPORATED'S REPLY IN SUPPORT OF MOTON TO QUASH RULE 17(c) SUBPOENA DUCES TECUM** |
| v. | |
| KARIM ARABI, SHEIDA ALAN, SANJIV TANEJA, and ALI AKBAR SHOKOUHI, | *[Filed concurrently with Declaration of Byron Yafuso]* |
| Defendants. | |

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ........................................................................................ 1

II.     ARGUMENT ............................................................................................... 1

    A.      QUALCOMM MAY NOT HAVE THE DATA ARABI
          SEEKS ................................................................................................ 1

    B.      SOURCE CODE REPOSITORIES ARE NOT
          ROUTINELY INSPECTED IN LITIGATION ..................................... 2

    C.      EVEN IF IT EXISTS, USING THE DATA WOULD
          TAKE WEEKS ................................................................................... 3

    D.      SOURCE CODE REPOSITORIES DO NOT PROVIDE
          THE INFORMATION ARABI ASSUMES THEY DO ........................ 4

III.    CONCLUSION ........................................................................................... 5

Case No.  3:22-cr-01152-BAS
NON-PARTY QUALCOMM INCORPORATED'S REPLY IN SUPPORT OF MOTON TO QUASH SUBPOENA

## I.    INTRODUCTION

Non-Party Qualcomm Incorporated ("Qualcomm") submits this reply in support of its Motion to Quash Defendant Karim Arabi's ("Defendant" or Arabi") Rule 17 subpoena dated October 30, 2024 ("2024 Subpoena").  Although Arabi submitted his entire opposition to the Motion to Quash under seal, Arabi responded to the Motion to Quash in part through his ex parte motion to continue trial ("Motion to Continue") and the December 9, 2024 hearing on that motion.  Unfortunately, several of Arabi's statements are incorrect and Qualcomm submits this reply to address them.

Arabi's incorrect statements concern the source code and related metadata that Arabi demanded from Qualcomm with Subpoena requests 2 and 3.[1]  Specifically, Arabi made inaccurate representations regarding: (1) whether Qualcomm has the data he seeks, (2) how commonly the type of data he seeks is produced in civil litigation, (3) how quickly the type of data he seeks could be produced, reviewed, and used at trial, and (4) what kind of information the data he seeks would contain.

The true facts on each of these issues further demonstrate the invalidity of Arabi's Rule 17 subpoena to Qualcomm, which is overbroad, seeks privileged and inadmissible materials, and should be quashed.  *See* Fed. R. Crim. P. 17(c)(2).

## II.    ARGUMENT

### A.    QUALCOMM MAY NOT HAVE THE DATA ARABI SEEKS.

First, Arabi incorrectly asserts that "Qualcomm does not dispute that [the source code and metadata Arabi seeks] still exists."  Dkt. No. 298 (Motion to Continue, "Mot.") at 5.  His counsel further represented at the December 9 hearing that she was certain that the source code and metadata exists.  Declaration of Byron Yafuso in support of Reply to Motion to Quash ("Yafuso Reply Decl.") ¶ 9.  But in fact,

---

[1] Subpoena Request 2 demands "Abreezio's source code and revision control repository, including all metadata" that former Invionics employees allegedly delivered to Qualcomm employee Robert Kwan on a USB key or hard drive, "in or around early November 2015." Request 3 demands "[a]ll source code and revision control repositories, including all metadata related to any Field Programmable Gate Array ('FPGA') demos Abreezio presented to Qualcomm during due diligence."

Qualcomm may *not* have the nearly decade-old source code and metadata that Arabi seeks. As the declaration from Byron Yafuso submitted in support of Qualcomm's Motion to Quash established, given that the 2024 Subpoena requests source code and revision control repositories that are more than nine years old, it is unclear whether the data still exists. *Id.* ¶¶ 9-11. To the extent these data *do* exist, they were likely archived at an off-site location. *Id.* ¶ 10. Searching for the data alone is a burdensome process that can take several weeks. *Id.* ¶ 11. And even if the data could be located, there is no guarantee that Qualcomm still has the equipment necessary to extract information from it, or that the data has not deteriorated. *Id.* ¶ 10. In sum, there is a significant chance the data Arabi requests do not exist.

### B.    SOURCE CODE REPOSITORIES ARE NOT ROUTINELY INSPECTED IN LITIGATION.

Second, Arabi incorrectly asserted that inspection of source code repositories is "routinely done in civil litigation cases subject to standard protective orders and set protocol." Mot. 5. His counsel further claimed that source code repositories are inspected "all the time" and inspection of these repositories is "not complicated." Yafuso Reply Decl. ¶ 12.

With these incorrect statements, Arabi seems to be conflating source code, which is human-readable, with source code repositories, which are not. It is true that Qualcomm has often made *source code* available for inspection in civil litigation. But source code repositories are another matter. In the more than 15 years that Qualcomm's Senior Legal Counsel has managed source code discovery, he "cannot recall a single case [he has] worked on involving inspection of non-human-readable software source code repositories or metadata." *Id.* ¶ 12. Source code repositories are therefore not the subject of standard protective orders or protocols. Unsurprisingly, none of the example protective orders submitted with Mr. Yafuso's declaration in support of Qualcomm's Motion to Quash contain provisions for evaluating

Qualcomm's source code repositories. *See* Dkt. Nos. 293-5–293-8 (Exs. A-D to Byron Declaration). Nor can Defendant point to one.

Because a source code repository constitutes non-human-readable metadata and are rarely if ever inspected, making such a repository and its attendant metadata available for inspection would create unique technical challenges. Among other things, it would require the installation of special software in Qualcomm's source code review environment. Yafuso Reply Decl. ¶ 12. Qualcomm would need to identify the specific source code repository host software needed to inspect metadata inside the repository files, and then purchase or acquire licenses to that host software. *Id.* ¶ 14. It would then need to evaluate whether and how that source code repository host software could be installed in Qualcomm's source code inspection environment and to ensure that a reviewer could use the software to convert relevant metadata into PDF or similar readable files suitable for conversion into hard copy printouts that could be produced under a suitable protective order. *Id.* Qualcomm does not currently have any systems in place to address these challenges, and particularly not on any condensed timeline.

C.    **EVEN IF IT EXISTS, USING THE DATA WOULD TAKE WEEKS.**

Third, Arabi incorrectly states that "[e]valuating [Qualcomm's] IP … is routine, straightforward, and should not take more than six weeks." Mot. 6; *see also Id.* at 2 ("[I]f the Qualcomm subpoena is promptly enforced, a six-week continuance is expected to suffice [ ] to allow the defense time to obtain, review, and integrate into the defense presentation this critical exculpatory digital evidence.").

As explained above, the initial step of determining whether Qualcomm even has the requested data could take several weeks. Yafuso Reply Decl. ¶ 11. Arabi's counsel suggested at the December 9 hearing that archived data can be retrieved from an off-site location within one to two weeks. *Id.* But this estimate lacks any basis and is unrealistic. Even if Arabi sought only to inspect Qualcomm source code, there would

be several additional steps to make the source code usable as trial evidence: (1) Qualcomm makes files available for inspection at its off-site vendor, ProSearch; (2) the reviewing party's attorneys or experts inspect the source code at ProSearch (subject to review room availability and inspection charges by ProSearch) and create PDF printouts of select pages of source code; (3) Qualcomm converts the selected PDF source code printouts into numbered hard copy printouts and produces those copies to the parties under a suitable protective order; and (4) the parties' experts refer to the source code printouts in expert reports and/or declarations, typically opening reports as well as rebuttal reports. *Id.* ¶ 13.

Arabi's extraordinary demand for source code repositories complicates matters even further. If Qualcomm were required to make source code repositories and attendant metadata available for inspection too, Qualcomm would need to take additional steps, including (1) identifying the specific source code repository host software needed to inspect metadata inside the repository files; (2) purchasing or acquiring licenses to that host software as necessary; and (3) evaluating whether and how that source code repository host software could be installed in the source code inspection environment at ProSearch and ensuring that a reviewer could use it to convert relevant metadata into PDF files suitable for conversion into hard copy printouts that could be produced under a suitable protective order. *Id.* ¶ 14. Many of these steps could take longer than six weeks by themselves. *Id.*

**D.    SOURCE CODE REPOSITORIES DO NOT PROVIDE THE INFORMATION ARABI ASSUMES THEY DO.**

Finally, Arabi misunderstands what the requested data would even show. He incorrectly claims that "the outstanding subpoenaed evidence from Qualcomm will reveal the identity of every person who authored the key software and FPGA demos Qualcomm evaluated during due diligence and acquired from Abreezio." Mot. 6; *see also* Mot. 5 ("A proper evaluation of the metadata of the source code and control repository … will identify who created these tools and what specific IP concepts were

- 4 -

implemented in them."). But the source code and source code repositories he seeks would not reveal "authorship." At best, the metadata of a source code repository may show which account or initials were used to "check in" or "commit" into the repository various versions of source code files and when. Byron Reply Decl. ¶ 15. But such metadata would not show who made the source code revisions contained in those file versions, or who conceived any inventions embodied therein. *Id.* Arabi's requests, therefore, will not reveal the information he seeks, and the 2024 Subpoena should be quashed as irrelevant and overbroad. *See* Fed. R. Crim. P. 17(c)(2).

## III.  CONCLUSION

The inaccuracies by Arabi in the Motion for Continuance and related hearing further demonstrate the impropriety of the 2024 Subpoena. The Court should quash the subpoena in its entirety because it seeks irrelevant, privileged, and otherwise inadmissible materials and compliance with the subpoena would be unreasonable and oppressive to Qualcomm. *See* Fed. R. Crim. P. 17(c)(2).

 Dated: December 10, 2024                    HUESTON HENNIGAN LLP

By: _____
Marshall Camp
Padraic Foran
Lauren Border

*Counsel for Non-Party*
*Qualcomm Technologies, Inc.*

**PROOF OF SERVICE**

*United States of America, V. Karim Arabi, et al.*
U.S.D.C. Southern District of California, Case No. 3:22-cr-01152-BAS

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 523 West 6th Street, Suite 400, Los Angeles, CA 90014.

I hereby certify that on December 10, 2024, I caused the electronically filed aforementioned document with the United States District Court Southern District of California by using the CM/ECF system. I certify that counsel of record registered as ECF Filers will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 10, 2024, at Los Angeles, California.


_____          _____
        Susan Segovia                                    (Signature)
    (Type or print name)

- 6 -