HUESTON HENNIGAN LLP
Marshall A. Camp, State Bar No. 231389
mcamp@hueston.com
Padraic Foran, State Bar No. 268278
pforan@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 866-4825

*Attorneys for Non-Parties*
*Qualcomm Incorporated,*
*Qualcomm Technologies,*
*Incorporated, and*
*Nicholas Cole*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:22-cr-01152-BAS |
| Plaintiff, | **NON-PARTIES QUALCOMM INCORPORATED, QUALCOMM TECHNOLOGIES, INCORPORATED, AND NICHOLAS COLE'S NOTICE OF MOTION AND MOTION TO QUASH NICK COLE'S TRIAL SUBPOENA** |
| v. | |
| KARIM ARABI, SHEIDA ALAN, SANJIV TANEJA, and ALI AKBAR SHOKOUHI, | |
| Defendants. | *[Filed concurrently with Declaration of Padraic Foran]* |

- 1 -

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on a date and time to be determined by the Court, in the James M. Carter and Judith M. Keep United States Courthouse of the United States District Court for the Southern District of California, located at 333 West Broadway, San Diego, CA 92101, Non-Parties Qualcomm, Incorporated and Qualcomm Technologies, Incorporated ("Qualcomm") and Mr. Nicholas Cole ("Mr. Cole"), by and through their undersigned counsel, will and hereby does move under Federal Rule of Criminal Procedure Rule 17(c) and Criminal Local Rule 17.1 for an order quashing a Federal Rule of Criminal Procedure Rule 17(a) subpoena (the "Subpoena") served by Defendant Karim Arabi ("Dr. Arabi") on Mr. Cole.

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities in support thereof, the concurrently filed Declaration of Padraic W. Foran and Exhibits thereto, and any other materials or facts on which the Court may rely.

As set forth in more detail in Qualcomm's Memorandum of Points and Authorities, this Motion is brought on the following grounds:

1. *First*, Dr. Arabi improperly intends to examine Mr. Cole regarding communications with his client, Qualcomm, that are protected by the attorney-client privilege.

2. *Second*, Dr. Arabi improperly intends to use Mr. Cole's testimony to introduce inadmissible hearsay, excluded by Federal Rules of Evidence Rule 802, and to invade protected attorney work-product.

3. *Third*, complying with the Subpoena would impose unreasonable and oppressive conflicting duties on Mr. Cole, who would face both (1) ethical duties to the Court to provide complete testimony and (2) ethical and professional duties to his former client not to disclose their privileged attorney-client communications.

1    Accordingly, Qualcomm and Mr. Cole respectfully request the Court grant its

2  Motion and quash the subpoena.

3

4  Dated: March 10, 2025                     Respectfully submitted,

5                                            HUESTON HENNIGAN LLP

6

7                                            By:

8                                               Padraic Foran

9                                               Counsel for Non-Parties
                                                Qualcomm Incorporated
10                                              Qualcomm Technologies,
                                                Incorporated
11                                              Nicholas Cole

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................... 2

    A.      Mr. Cole Is a Former In-House Patent Counsel at Qualcomm ................................................................................... 2

    B.      Dr. Arabi Subpoenas Mr. Cole, Falsely Assuring Him That He Will Not Examine Mr. Cole About His Attorney-Client Communications ........................................................................ 3

    C.      Mr. Cole and Qualcomm Discover that Dr. Arabi Plans to Examine Mr. Cole on a Privileged Attorney-Client Communication .......................................................................... 4

    D.      Qualcomm Produced Defense Exhibit 2545 Inadvertently in the Civil Litigation and to the Government ........................... 5

    E.      Dr. Arabi Refuses to Comply with Qualcomm's Prompt Clawback Request and His Counsel Confirms that She Intends to Examine Mr. Cole About Defense Exhibit 2545 ................. 7

III.    ARGUMENT .............................................................................................. 7

    A.      Dr. Arabi Seeks Inadmissible, Privileged Testimony from Mr. Cole that Would Invade and Destroy Privilege .............................. 8

        1.      The Only Trial Exhibit Relating to Mr. Cole Is Protected by Attorney Client Privilege ......................................... 8

        2.      Qualcomm Has Preserved and Not Waived its Privilege in Defense Exhibit 2545 ................................................... 9

        3.      Mr. Cole's Testimony Would Be Based Solely on Confidential and Privileged Information Acquired Through the Attorney-Client Relationship ............................. 11

    B.      Dr. Arabi Seeks to Use Mr. Cole to Admit Inadmissible Hearsay ............................................................................... 13

    C.      Testimony by Mr. Cole Would Impair His Ethical and Professional Duties to His Former Client ........................... 14

IV.     CONCLUSION ........................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Commonwealth Cap. Corp. v. City of Tempe,*
  No. 2:09-CV-00274 JWS, 2011 WL 1237559 (D. Ariz. Apr. 1, 2011)...................8

*In re Horn,*
  976 F.2d 1314 (9th Cir. 1992).................................................................................11

*Laethem Equip. Co. v. Deere & Co.,*
  No. 2:05-CV-10113, 2008 WL 4997932 (E.D. Mich. Nov. 21, 2008)..................10

*McDermott Will & Emery LLP v. Superior Ct.,*
  10 Cal. App. 5th 1083 (2017)..................................................................................12

*Militello v. VFARM 1509,*
  89 Cal. App. 5th 602 (2023)....................................................................................12

*Republic of Ecuador v. Mackay,*
  742 F.3d 860, fn.3 (9th Cir. 2014) ......................................................................2, 14

*Rico v. Mitsubishi Motors Corp.,*
  42 Cal. 4th 807 (2007)..........................................................................................9, 12

*State Comp. Ins. Fund v. WPS, Inc.,*
  70 Cal. App. 4th 644 (1999)..............................................................................9, 12, 13

*United States v. Bergeson,*
  425 F.3d 1221 (9th Cir. 2005).............................................................................1, 12

*United States v. Collins,*
  No. 11-CR-00471-DLJ PSG, 2013 WL 1089908 (N.D. Cal. Mar. 15, 2013) ........13

*United States v. Hardy,*
  No. 316CR00006MMDVPC, 2017 WL 11463113 (D. Nev. Sept. 1, 2017)..........11

*United States v. Mendoza,*
  No. 16-CR-00150-BLF-3, 2021 WL 4077979 (N.D. Cal. Sept. 8, 2021) ..............14

*United States v. Nat'l Ass'n of Realtors,*
  242 F.R.D. 491 (N.D. Ill. 2007) ........................................................................10, 11

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) .................................................................................. 8

**Statutes**

Bus. & Prof. Code § 6068 .............................................................................. 14

Case No.  3:22-cr-01152-BAS
NON-PARTIES QUALCOMM INCORPORATED, QUALCOMM TECHNOLOGIES, INCORPORATED AND
NICHOLAS COLE'S NOTICE OF MOTION AND MOTION TO QUASH TRIAL SUBPOENA

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**I.    INTRODUCTION**

Non-Party Qualcomm, Inc. and Non-Party Qualcomm Technologies, Inc. (collectively "Qualcomm") and Non-Party Mr. Nicholas Cole ("Mr. Cole") move to quash the Rule 17(a) subpoena (the "Subpoena") that Defendant Karim Arabi ("Dr. Arabi") served on Mr. Cole. Mr. Cole was in-house counsel at Qualcomm where he worked on patent applications, including for technologies that the company acquired from Abreezio.

Qualcomm and Mr. Cole recently learned that Dr. Arabi seeks to use Mr. Cole's testimony to invade Qualcomm's attorney-client privilege. The trial subpoena to Mr. Cole should be quashed as unreasonable or oppressive under Federal Rule of Criminal Procedure 17.

*First*, Dr. Arabi improperly intends to examine Mr. Cole regarding privileged communications with his client, Qualcomm. Qualcomm understands that the only trial exhibit pertaining to Mr. Cole is Defense Exhibit 2545, an email exchange between Mr. Cole and then-Qualcomm employee Defendant Bradley Quinton ("Mr. Quinton"). The plain and express purpose of the email—which is labeled "ATTORNEY-CLIENT PRIVILEGED COMMUNICATION"—was to develop Qualcomm's legal strategy regarding a patent application related Abreezio technology. Even after knowing that Qualcomm produced this privileged document inadvertently, Dr. Arabi's counsel is refusing to destroy it and expressly states that she intends to use the document to examine Mr. Cole. A trial subpoena should be quashed when, as here, it is likely to destroy the attorney-client privilege. *See United States v. Bergeson*, 425 F.3d 1221, 1226 (9th Cir. 2005).

*Second*, any statements by Mr. Quinton in Defense Exhibit 2545 are inadmissible hearsay, excluded by Federal Rules of Evidence Rule 802. And any of Mr. Cole's thoughts, impressions, or reactions to such statements are protected

attorney work-product. *See Republic of Ecuador v. Mackay,* 742 F.3d 860, 869, fn.3 (9th Cir. 2014).

*Third*, complying with the Subpoena would impose unreasonable and oppressive conflicting duties on Mr. Cole, who would face both (1) ethical duties to the Court to provide complete testimony and (2) ethical and professional duties to his former client not to disclose their privileged attorney-client communications. This would force Mr. Cole and Qualcomm to attempt to assert attorney-client privilege and work-product protection in real time, even though neither is a party to this criminal action and their attorneys may not be able to object immediately during questioning. In addition to imposing serious burdens on both non-parties, this would disrupt trial proceedings and create a distracting sideshow.

For the reasons set forth below, the Court should grant Qualcomm and Mr. Cole's motion to quash the Fed. R. Crim. P. 17(a) trial subpoena Dr. Arabi has served on Mr. Cole.

## II.   FACTUAL BACKGROUND

### A.   Mr. Cole Is a Former In-House Patent Counsel at Qualcomm.

Mr. Cole is an attorney who served in various in-house counsel roles at Qualcomm for nearly ten years. He held the title of Patent Counsel from April 2012 to November 2015 (i.e., before and during Qualcomm's acquisition of Abreezio) and then Senior Patent Counsel from November 2015 to June 2018 (i.e., after Qualcomm's acquisition of Abreezio). *See* Declaration of Padraic Foran (Foran Decl.) ¶ 3. In these positions, Mr. Cole was responsible for, among other things, developing and executing the company's legal strategy in protecting its intellectual property, including filing of provisional and non-provisional patent applications. *Id.* For a brief period in 2015 and 2016, Mr. Cole had duties relating to patent applications for inventions purportedly acquired through the Abreezio transaction. *Id.* Mr. Cole now works in private practice in San Diego as a patent attorney. *See* Foran Decl. Ex. B (Mr. Cole's LinkedIn profile).

**B.    Dr. Arabi Subpoenas Mr. Cole, Falsely Assuring Him That He Will Not Examine Mr. Cole About His Attorney-Client Communications.**

On January 22, 2025, counsel for Dr. Arabi served Mr. Cole, though his counsel, with the Subpoena. *See* Foran Decl. Ex. A (the Subpoena).

Mr. Cole's counsel (who also represents Qualcomm) promptly wrote to Dr. Arabi's counsel to raise the concern that Dr. Arabi may use Mr. Cole's testimony to attempt to invade Qualcomm's attorney-client privilege. As Mr. Cole's counsel explained:

> We are considering whether to move to quash the subpoena to Mr. Cole. He was counsel to Qualcomm, and it seems to us that any information he has that is material to this case is probably protected by the attorney-client privilege or work product doctrine. But I think a call would be helpful, because if you believe he has material non-privileged information, I would like to understand.

Foran Decl. Ex. C (January 28, 2025 email from P. Foran to W. Bernstein). Counsel for Mr. Cole and Dr. Arabi met and conferred about this issue on February 5, 2025. *See* Foran Decl. ¶ 5. During that call, Dr. Arabi's counsel, Ms. Bernstein, reassured Mr. Cole's counsel that she intended to examine Mr. Cole regarding only *non*-privileged communications with third parties. *Id*. Although she declined to disclose the precise topics of her expected examination, she reassured Mr. Cole's counsel that she would not seek to invade any attorney-client privilege, specifically confirming that she would not seek any testimony regarding any discussion between Mr. Cole and his client. *Id*. Neither Mr. Cole nor Qualcomm has access to the trial exhibit lists in this case, so they were unable to identify trial exhibits that would purportedly be the subject of Mr. Cole's examination with third parties. Qualcomm and Mr. Cole therefore had

little choice but to rely on Ms. Bernstein's representations. *Id.* ¶ 6. Unfortunately, those representations were false.

### C. Mr. Cole and Qualcomm Discover that Dr. Arabi Plans to Examine Mr. Cole on a Privileged Attorney-Client Communication.

Recently, on February 27, 2025, counsel for Mr. Cole and Qualcomm learned from counsel for the Government that there is just one trial exhibit relating to Mr. Cole in this case: a privileged email between Mr. Cole and a then-Qualcomm employee. *See id.* ¶ 7.

The privileged communication is Bates stamped QCARABI_0044126, which has apparently been designated Defense Exhibit 2545. *Id.* Defense Exhibit 2545 is an email chain between Mr. Cole and Defendant Quinton beginning December 10, 2015—after Qualcomm acquired Abreezio and Mr. Quinton had become a Qualcomm employee. *Id.* The subject line is "Critical Path Sensor Provisional - Abreezio Case CONFIDENTIAL ATTORNEY WORK PRODUCT AND/OR ATTORNEY-CLIENT PRIVILEGED COMMUNICATION." *See id.* ¶ 8. In the email, Mr. Cole requests and Mr. Quinton provides certain information regarding a provisional patent application for a purported Abreezio invention. *Id.* The plain and express purpose of requesting and providing this information was for Mr. Cole to develop Qualcomm's legal strategy regarding the provisional patent application, including whether to submit a non-provisional patent application.[1] *Id.*

---

[1] Qualcomm does not attach a copy of Defense Exhibit 2545, because the document is privileged and Qualcomm wants to avoid disseminating it further. But if the Court believes it needs to review a copy of Defense Exhibit 2545 to resolve this Motion to Quash the Subpoena, Qualcomm stands ready to produce Defense Exhibit 2545 to the Court *in camera*.

**D.    Qualcomm Produced Defense Exhibit 2545 Inadvertently in the Civil Litigation and to the Government.**

Dr. Arabi possesses Defense Exhibit 2545 only because Qualcomm produced it inadvertently in the civil action that Qualcomm filed in San Diego Superior Court against Defendants Arabi, Sheida Alan, and Sanjiv Taneja, captioned *Qualcomm v. Arabi et al.,* Case Number 37-2017-00040719-CU-FR-CTL (S.D. Super.) (Trapp, J.) (the "Civil Litigation"). *See id.* ¶ 11. In the Civil Litigation, Qualcomm reviewed many thousands of documents, ultimately producing nearly 100,000 documents. *See id.* ¶ 12. As part of that review, Qualcomm attorneys conducted an expensive and lengthy privilege review. *See id.* ¶ 13. They ultimately identified and withheld more than 5,000 documents on the basis of privilege and provided a privilege log 874 pages long. *Id.* In such large-scale document review projects, it is inevitable that some privileged documents will be missed. Through inadvertence, Defense Exhibit 2545, was not identified as privileged and was produced, though it was designated and marked "confidential."[2]

Qualcomm then re-produced this document to the Government in response to a grand jury subpoena requesting that Qualcomm re-produce all discovery it had already produced in the Civil Litigation. *Id.* In *re*-producing documents from the Civil Litigation to the Government, Qualcomm did not conduct any additional re-review, including because it had already conducted a large-scale and expensive privilege review. Qualcomm did not produce or share Defense Exhibit 2545 with anyone else.

---

[2] Under the Court-ordered Protective Order in the Civil Litigation, the parties were required (upon request made 30 days after settlement or termination of the proceeding) to return or destroy confidential documents and materials. *See* Foran Decl. Ex. E at ¶ 22. Dr. Arabi's counsel made such a request. Dr. Arabi and other defendants in the Civil Litigation have represented that they destroyed all confidential documents that Qualcomm produced in the Civil Litigation pursuant to this Protective Order and request.

Under both California law and Federal Rule of Evidence 502, the inadvertent production of privileged electronically stored information (ESI) is not a waiver of privilege. California civil procedure establishes an express process for the clawback of ESI that is subject to a claim of privilege. *See* Civ. Proc. Code § 2031.285. Dr. Arabi's own counsel exercised this privilege in the Civil Litigation, clawing back allegedly privileged documents that it claimed had been produced inadvertently. *See* Foran Decl. Ex. F (April 12, 2018 email from Dr. Arabi's counsel in the Civil Litigation to P. Foran). This power to claw back inadvertently produced ESI is essential to modern discovery, where parties produce many thousands of electronic documents, and the inadvertent production of privileged ESI is virtually unavoidable. Parties can make large-scale document productions efficiently, without fearing that they will unknowingly waive a cherished privilege. Qualcomm relied on this right under California law in producing ESI in the Civil Litigation and again to the Government.

Qualcomm acted immediately upon learning of the inadvertent production of the privileged Cole-Quinton email chain in the civil litigation and its inadvertent reproduction in this case. Specifically, on February 27, 2025, Qualcomm first learned that it had produced the privileged Cole-Quinton email chain upon learning that it had been designated as Defense Exhibit 2545. *See* Foran Decl. ¶ 10. Qualcomm sent its clawback request to the Government that same day. *See* Foran Decl. Ex. D (February 27, 2025 email from P. Foran to Government counsel). In the clawback request, Qualcomm asked that the Government cease using the document for any purpose, destroy all copies, and request that all parties to whom the Government produced the document do the same. *See* Foran Decl. ¶ 10.

Dr. Arabi Refuses to Comply with Qualcomm's Prompt Clawback Request and His Counsel Confirms that She Intends to Examine Mr. Cole About Defense Exhibit 2545.

Mr. Cole's and Qualcomm's counsel met and conferred with Dr. Arabi's counsel on March 5, 2025, regarding Defense Exhibit 2545 and Dr. Arabi's previous assurances about Mr. Cole's testimony. *See* Foran Decl. ¶ 19. During that call, Dr. Arabi's counsel confirmed that the Government had relayed Qualcomm's clawback request. *Id.* Dr. Arabi's counsel nevertheless confirmed that she does *not* plan to destroy or cease using the document. *Id.* In fact, she confirmed that she *does* intend to examine Mr. Cole on Defense Exhibit 2545, contrary to her prior assurances that she intended to examine Mr. Cole regarding only *non*-privileged communications with third parties. *Id.* She would not identify any other topics on which she intends to examine Mr. Cole. *Id.* Following this meet and confer, Mr. Cole and Qualcomm's counsel informed Dr. Arabi's counsel of their intent to move to quash the subpoena. *See id.* ¶ 20. In response, Dr. Arabi's counsel asserted that they did not agree Defense Exhibit 2545 "was inadvertently produced or is privileged," though Dr. Arabi has not provided any basis for this assertion. *See* Foran Decl. Ex. G (March 7, 2025 email between P. Foran and W. Bernstein). Mr. Cole and Qualcomm now bring this motion to quash the trial subpoena to Mr. Cole.

## III.   **ARGUMENT**

Under Rule 17(c)(2), the Court may quash a trial subpoena when compliance would be "unreasonable or oppressive." The Subpoena to Mr. Cole is unreasonable and oppressive for three independent reasons: (1) Dr. Arabi seeks to use Mr. Cole's testimony to invade and destroy the attorney-client privilege; (2) Dr. Arabi seeks to use Mr. Cole's testimony to admit inadmissible hearsay; and (3) requiring Mr. Cole to testify would impose an untenable burden on Mr. Cole to comply with conflicting duties to his client and to the Court and would create a distracting and time-consuming spectacle.

**A.     Dr. Arabi Seeks Inadmissible, Privileged Testimony from Mr. Cole that Would Invade and Destroy Privilege.**

The Subpoena is unreasonable and oppressive because Dr. Arabi seeks inadmissible testimony from Mr. Cole that would destroy attorney-client privilege. The Court should grant this Motion for this reason alone.

**1.     The Only Trial Exhibit Relating to Mr. Cole Is Protected by Attorney Client Privilege.**

Defense Exhibit 2545, the only trial exhibit pertaining to Mr. Cole, is plainly a privileged attorney-client communication. "[T]o be privileged, [a] communication must be made to or by the lawyer for the purpose of securing or giving legal advice, must be made in confidence, and must be treated as confidential." *Commonwealth Cap. Corp. v. City of Tempe*, No. 2:09-CV-00274 JWS, 2011 WL 1237559, at *1 (D. Ariz. Apr. 1, 2011). Here, an in-house attorney (Mr. Cole) communicated with his client (Mr. Quinton, an employee of Qualcomm). *Upjohn Co. v. United States,* 449 U.S. 383, 397, 401 (1981) (finding "communications by [ ] employees to counsel are covered by the attorney-client privilege"); *see also* Dkt. No. 9 (Superseding Indictment) ¶¶ 3, 16 (noting acquisition of Abreezio in October 2015). The communication was made in confidence and treated as confidential. For instance, no other individuals were included in the email chain, and the email says "CONFIDENTIAL" in the subject line. The communication was made for the purpose of giving legal advice: Mr. Cole asked Mr. Quinton for information about an alleged Abreezio invention for purposes of advising Qualcomm whether and how to apply for a patent and Mr. Quinton responded to provide information for that purpose.

**2.     Qualcomm Has Preserved and Not Waived its Privilege in Defense Exhibit 2545.**

Qualcomm's production of this document in the Civil Litigation does not waive any privilege under Federal Rule of Evidence 502, both because it was not a waiver

under California law where the disclosure initially occurred, and because its re-production to the Government was not a waiver under federal law.

First, Qualcomm's production of Defense Exhibit 2545 in the Civil Litigation was "not a waiver under the law of the state where the disclosure occurred." Fed. R. Evid. 502(c)(2). The California Supreme Court "hold[s] that 'waiver' does not include accidental, inadvertent disclosure of privileged information by the attorney." *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 654 (1999); *see also Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 818 (2007) (citation omitted). California civil procedure even establishes an express process for parties to clawback of ESI that is subject to a claim of privilege. *See* Civ. Proc. Code § 2031.285. In fact, Arabi's counsel in the Civil Litigation used that very procedure to claw back allegedly inadvertently produced material subject to a claim of privilege. *See* Foran Decl. Ex. F.

*Second*, Qualcomm's re-production of Defense Exhibit 2545 to the Government—along with the nearly 100,000 other documents that Qualcomm re-produced—is an "inadvertent production" under Fed. R. Evid. 502(b). Under that rule, disclosure in a federal proceeding or to a federal office "does not operate as a waiver … if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." The re-production of Defense Exhibit 2545 meets all three criteria.

On criterion (1), Qualcomm did not intend to produce any privileged communications between its patent counsel and Qualcomm employees, and there is no evidence to the contrary. For instance, Qualcomm has never cited or used Defense Exhibit 2545 in any pleading or argument. On criterion (2), Qualcomm took reasonable steps to prevent disclosure of the document in the Civil Litigation, particularly considering the "voluminous discovery" in the case. *See Laethem Equip. Co. v. Deere & Co.*, No. 2:05-CV-10113, 2008 WL 4997932, at *8-10 (E.D. Mich. Nov. 21, 2008)

(finding no waiver when a party inadvertently disclosed two disks of privileged information). Qualcomm conducted a large-scale privilege review, reviewing many thousands of documents, and ultimately producing nearly 100,000 documents and creating a privilege log more than 800 pages long with more than 5000 entries. *See* Foran Decl. ¶ 13. Qualcomm was not required to conduct repeated re-review of this production set for privilege documents. *United States v. Nat'l Ass'n of Realtors*, 242 F.R.D. 491, 495 (N.D. Ill. 2007) (even though it was "somewhat surprising" that party's attorney did not discover privileged email during privilege review, "it was reasonable for [party] to have reviewed the emails only once specifically for privilege and not unreasonable for the email to have slipped through."); *see also Heriot v. Byrne*, 2009 BL 58296 at *13-14 (N.D. Ill. Mar. 20, 2009) (holding that a party took reasonable steps, even though there was a possibility that a re-review of the production after delivering it to their vendor would have shown that the production included privileged documents); *see also* Explanatory Note on Evidence Rule 502 Prepared by the Judicial Conference Advisory Committee on Evidence (revised Nov. 28, 2007). Nor should it have been: the production of high-volume ESI is commonplace in modern litigation and requiring parties to conduct repetitive and extremely expensive post-production reviews for fear of potentially waiving privilege would only hamper civil discovery. On criterion (3), once Qualcomm's counsel discovered this privileged communication had been produced, it "promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b)(3); *see also Laethem*, 2008 WL 4997932, at *8 (noting that the party objected to the use of disclosed documents immediately upon discovering them in a deposition). The promptness is measured from the time the disclosure was discovered, not the time it was produced. *National Association of Realtors*, 242 F.R.D. at 495 (no waiver where, although "several years passed between the production of the [privileged] Email and [party's] assertion of privilege, [party] took virtually no time to rectify the error once DOJ notified it of the production").

Here, Qualcomm's counsel sought to claw Defense Exhibit 2545 back from the Government the very same day Qualcomm first became aware of it. *See* Foran Decl. ¶ 10.

### 3. Mr. Cole's Testimony Would Be Based Solely on Confidential and Privileged Information Acquired Through the Attorney-Client Relationship.

When the subpoenaing party "does not demonstrate that [the potential witness] has relevant, admissible information based on his personal knowledge, and not based on information acquired through his attorney-client relationship," courts will quash a subpoena to testify under Rule 17(c)(2). *United States v. Hardy*, No. 316CR00006MMDVPC, 2017 WL 11463113, at *2 (D. Nev. Sept. 1, 2017) (granting motion to quash trial testimony subpoena of third-party attorney witness because the potential testimony would only be based on privileged information). Again, the *only* document on Dr. Arabi's exhibit list referring to Mr. Cole is a protected attorney-client communication. Dr. Arabi's counsel has confirmed she plans to examine Mr. Cole on this document and has declined to identify any other topic on which she plans to examine him. The information sought by the Subpoena thus falls squarely within "the area of sanctuary created by the attorney-client privilege" and Dr. Arabi has not demonstrated that he seeks any relevant or admissible information. *In re Horn*, 976 F.2d 1314, 1318 (9th Cir. 1992) (directing trial court to enter an order quashing a Rule 17 subpoena that sought privileged information).

Testimony by counsel about an attorney-client relationship is so disfavored that a subpoena may be unreasonable and oppressive under Rule 17(c)(2) even when it does *not* invade the attorney-client *privilege* but merely threatens the attorney-client *relationship*. *See Bergeson*, 425 F.3d at 1226 (affirming order to quash a subpoena that sought non-privileged testimony about whether lawyer told her client of the trial date, because such testimony was likely to damage lawyer's relationship with client). As the

Ninth Circuit explained, "the greater the likelihood" of damage to the attorney-client relationship, "the greater the potential for oppressiveness." *Id.* On these facts, the "potential for oppressiveness" is even greater. Not only does the subpoena threaten Mr. Cole's attorney-client relationship with Qualcomm, but (unlike the quashed subpoena in *Bergeson*) it seeks to invade the privilege itself.

It is also worth noting that attorneys have a duty to avoid the knowing use of an adverse party's privileged documents. California Rule of Professional Conduct 4.4 imposes an ethical duty on an attorney who receives a writing that appears to be an inadvertently produced attorney-client communication to "refrain from examining the writing[ ] any more than is necessary to determine that it is privileged or subject to the work product doctrine" and to "promptly notify the sender." Cal. Rules of Prof'l Conduct R. 4.4. This Rule of Professional Conduct tracks the common law standards long adopted and applied by the California Supreme Court in the seminal cases of *State Fund*, 70 Cal. App. 4th at 657 and *Rico*, 42 Cal. 4th at 818. The California Supreme Court prohibited lawyers from the use of inadvertently produced privileged material both "to protect the sanctity of the attorney-client privilege and to discourage unprofessional conduct." *State Fund*, 70 Cal. App. 4th at 657. The duty to comply with this rule is so significant that California courts have disqualified counsel for their failure to comply. *See, e.g., McDermott Will & Emery LLP v. Superior Ct.*, 10 Cal. App. 5th 1083, 1107 (2017); *Militello v. VFARM* 1509, 89 Cal. App. 5th 602, 607 (2023) ("counsel's knowing use of the opposing side's privileged documents, however obtained, is a ground for disqualification.")

The same principles apply here. Even after learning of Qualcomm's claim of privilege, Dr. Arabi persists in using Defense Exhibit 2545, including by planning to examine Mr. Cole about it. This knowing use of a document subject to a claim of privilege is not only unprofessional—and a potential violation of CA ST RPC Rule 4.4—but is likely to destroy the attorney-client privilege. The Court should quash the

1  Subpoena "to protect the sanctity of the attorney-client privilege and to discourage

2  unprofessional conduct." *State Fund*, 70 Cal. App. 4th at 657.

3      **B.    Dr. Arabi Seeks to Use Mr. Cole to Admit Inadmissible Hearsay.**

4      The Subpoena is unreasonable and oppressive for the additional reason that Dr.

5  Arabi seeks to use Mr. Cole's testimony to admit inadmissible hearsay statements by

6  Mr. Quinton in Defense Exhibit 2545. As discussed above, Defense Exhibit 2545

7  includes statements both by Mr. Cole and Mr. Quinton, with Mr. Quinton responding

8  to Mr. Cole's questions for the purpose of providing legal advice to Qualcomm. It

9  appears that Dr. Arabi plans to examine Mr. Cole about Mr. Quinton's out-of-court

10 statements in the email exchange. These statements are inadmissible hearsay under

11 Fed. R. Evid. 802.

12     As the Court has noted in its previous orders, Mr. Quinton is currently under

13 indictment and in Canada facing extradition proceedings, so "he is unlikely to be a

14 witness at trial subject to impeachment." December 19, 2024 Order on Qualcomm's

15 Motion to Quash Arabi's Rule 17(c) Subpoena at 5. Mr. Quinton's responses are out-

16 of-court statements that Dr. Arabi's counsel would offer in evidence to prove the truth

17 of the matter asserted within them: hearsay under Federal Rules of Evidence Rule 801.

18 Under Federal Rules of Evidence Rule 802, these responses are inadmissible. *See, e.g.*,

19 *United States v. Collins,* No. 11-CR-00471-DLJ PSG, 2013 WL 1089908, at *4 (N.D.

20 Cal. Mar. 15, 2013) (quashing subpoena requests that "explicitly call[ed] for

21 inadmissible hearsay" about relevant topics and did not satisfy any hearsay exception).

22     The statements by Mr. Quinton do not fit under any hearsay exception. Even if

23 Dr. Arabi were to argue that he seeks to introduce the statements for their effect on

24 Mr. Cole or Qualcomm, that argument fails too. Mr. Cole's mental impressions,

25 conclusions, or opinions about his client's responses to his questions are at the core of

26 protected attorney work-product. *See Republic of Ecuador,* 742 F.3d at 869, fn.3

27 ("[A]n attorney's mental impressions, conclusions, opinions, or legal theories . . . [are]

28

- 13 -

Case No. 3:22-cr-01152-BAS
NON-PARTIES QUALCOMM INCORPORATED, QUALCOMM TECHNOLOGIES, INCORPORATED AND
NICHOLAS COLE'S NOTICE OF MOTION AND MOTION TO QUASH TRIAL SUBPOENA

1   virtually undiscoverable.") (cleaned up); *United States v. Mendoza*, No. 16-CR-00150-

2   BLF-3, 2021 WL 4077979, at *2 (N.D. Cal. Sept. 8, 2021) (granting motion to quash

3   trial testimony because the subject of the testimony, the witness's recollections,

4   constituted protected work-product). Dr. Arabi should not be permitted to invade this

5   topic either.

6       **C.    Testimony by Mr. Cole Would Impair His Ethical and Professional**

7            **Duties to His Former Client.**

8            Testifying at trial would also impose an unreasonable and oppressive burden on

9   Mr. Cole. Mr. Cole has a duty of candor toward the tribunal to provide truthful and

10  complete testimony. *See* Model Rules of Prof'l Conduct R. 3.3 (Duty of Candor

11  Toward the Tribunal); Cal. Rules of Prof'l Conduct, R. 3.3 (Candor Toward the

12  Tribunal). At the same time, Mr. Cole has a professional and ethical duty to protect

13  the confidentiality of his former clients (Qualcomm and its former employees) and any

14  privileged information that he learned during his time as an attorney for Qualcomm.

15  *See* Model Rules of Prof'l Conduct R. 1.6 (Confidentiality of Information); Model

16  Rules of Prof'l Conduct R. 1.9 (Duties to Former Clients); Cal. Rules of Prof'l

17  Conduct, R 1.6 (Confidential Information of a Client); Cal. Rules of Prof'l Conduct,

18  R 1.9 (Duties to Former Clients). California law imposes a duty on Mr. Cole to

19  "maintain inviolate" his client's confidences. *See* Bus. & Prof. Code § 6068 ("It is the

20  duty of an attorney … (e)(1) To maintain inviolate the confidence, and at every peril

21  to himself or herself to preserve the secrets, of his or her client.") As discussed above,

22  Dr. Arabi's counsel is expected to ask questions that almost immediately implicate

23  attorney-client privilege and work-product protection and thus create a conflict

24  between Mr. Cole's duties. Mr. Cole would be forced to wade through the inherent

25  conflict between providing complete testimony during trial and not violating his

26  obligations to Qualcomm.

27

28

Faced with questions about a clearly privileged communication and related issues, Mr. Cole and Qualcomm would be forced to attempt to assert attorney-client privilege and work-product protection in real time. Importantly, neither Qualcomm nor Mr. Cole is a party in this case and so their attorneys may be limited in their ability to object during questioning (unlike counsel for the Government or Dr. Arabi). This would impose additional unreasonable and oppressive burdens on both Qualcomm and Mr. Cole. This may also require a pause in questioning. It is likely the Court would even need to dismiss the jury to hear arguments outside their presence. All of this promises to waste Court time, to divert the attention of the jury, and to create a distracting spectacle. The Court should obviate the inevitable problems that would result and quash the Subpoena.

## IV. CONCLUSION

Dr. Arabi seeks to exploit Qualcomm's inadvertent production of a clearly privileged email. His attorneys ignore their professional obligations to cease using the document, instead persisting in their design to use Mr. Cole's testimony to destroy Qualcomm's sacred attorney-client privilege. The Court should not permit Dr. Arabi to do so. Qualcomm and Mr. Cole respectfully request the Court grant this motion and quash the Subpoena.

Dated: March 10, 2025

HUESTON HENNIGAN LLP

By: _____
Padraic Foran

*Counsel for Non-Parties*
*Qualcomm Incorporated,*
*Qualcomm Technologies,*
*Incorporated, Nicholas Cole*

- 15 -

## **PROOF OF SERVICE**

*United States of America, V. Karim Arabi, et al.*
U.S.D.C. Southern District of California, Case No. 3:22-cr-01152-BAS

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 523 West 6th Street, Suite 400, Los Angeles, CA 90014.

I hereby certify that on March 10, 2025, I caused the electronically filed aforementioned document with the United States District Court Southern District of California by using the CM/ECF system. I certify that counsel of record registered as ECF Filers will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 10, 2025, at Los Angeles, California.


_____           _____
Susan Segovia
(Type or print name)                              (Signature)

Case No. 3:22-cr-01152-BAS
NON-PARTIES QUALCOMM INCORPORATED, QUALCOMM TECHNOLOGIES, INCORPORATED AND
NICHOLAS COLE'S NOTICE OF MOTION AND MOTION TO QUASH TRIAL SUBPOENA